UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| PRINCELLA JONES, o/b/o JNJ, a minor, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | Case No. 4:20-CV-00780-SEP |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of Defendant Kilolo Kijakazi, the Acting Commissioner of Social Security, denying the application of Plaintiff Princella Jones, the mother of JNJ, a minor (Claimant), for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*. Because there is substantial evidence to support the decision, the Court will affirm the Acting Commissioner's denial of Plaintiff's application.

I.  **BACKGROUND**

On November 2, 2017, an application for SSI was filed on behalf of Claimant, who was under the age of eighteen as of the filing date. (Tr. 132-37). She alleged disability based on attention deficit hyperactivity disorder, with an onset date of September 11, 2017. (Tr. 132). Her application was initially denied on December 5, 2017. (Tr. 78-82). Claimant subsequently filed a Request for Hearing by Administrative Law Judge (ALJ). (Tr. 130-31).

The hearing was held on May 17, 2019, at which Claimant, along with her mother, Princella Jones, appeared and testified. (Tr. 27-68). Ms. Jones testified that her daughter was born in May of 2010, was almost nine years old at the time of the hearing, and was in the third

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she is substituted as Defendant in this case. No further action is needed for this action to continue. *See* 42 U.S.C. § 405(g) (last sentence).

grade. (Tr. 36). She further testified that Claimant was generally a B student, had never had to repeat a grade, and had never been in special education classes. (Tr. 36-37, 41). She testified that Claimant got pulled out of class for extra help with math and reading, as well as for counseling. (Tr. 37). She further testified that Claimant was diagnosed with ADHD in September 2017, for which she took medication, but that the effects of her medication wore off during the day, after which she had problems controlling her behavior and focusing. (Tr. 40). She also testified that Claimant's medication worked well, that she took it every day, and that she did "amazing" while on her medication. (Tr. 40-41, 45). She further testified that Claimant had no problems getting along with her peers or other individuals. (Tr. 41). She testified that Claimant had no trouble dressing herself or getting ready for school in the morning. (Tr. 42). She also testified that Claimant liked to play outside, and loved board games, word games, matching games, and computers. (Tr. 46).

In an opinion issued on August 8, 2019, the ALJ found that from September 11, 2017, the date her application was filed, through the date of the decision, Claimant was not "disabled" as defined under the Act. (Tr. 10-22). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's (SSA) Appeals Council. (Tr. 130-31). On May 28, 2020, the SSA's Appeals Council denied his Request for Review. (Tr. 1-6). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

As to further testimony, educational history, and medical records, the Court accepts the facts as provided by the parties. The Court will address specific facts related to the issues raised by the parties as needed in the discussion below.

## II.   STANDARD FOR DETERMINING CHILD DISABILITY UNDER THE ACT

A claimant under the age of eighteen is considered disabled and eligible for SSI under the Act if she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I).

The Commissioner is required to undergo a three-step sequential evaluation process when determining whether a child is entitled to SSI benefits. First, the Commissioner must determine whether the child is engaged in substantial gainful activity. If not, the Commissioner must then

determine whether the child's impairment, or combination of impairments, is severe.  Finally, if the child's impairment is severe, the Commissioner must determine whether such impairment meets, medically equals, or functionally equals the severity of an impairment listed in Appendix 1 of Subpart P of Part 404 of the Regulations (the Listings).  20 C.F.R. § 416.924(a); *Garrett ex rel. Moore v. Barnhart*, 366 F.3d 643, 647 (8th Cir. 2004).  If the impairment meets or medically equals a listed impairment, the child is disabled.  *Garrett*, 366 F.3d at 647.  If a child's impairment does not meet or medically equal a listed impairment, the Commissioner will assess all functional limitations caused by the child's impairment to determine whether the impairment functionally equals a listed impairment.  20 C.F.R. § 416.926a.  If this analysis shows the child not to have an impairment that is functionally equal in severity to a listed impairment, the ALJ must find the child not disabled.  *Wigfall v. Berryhill*, 244 F. Supp. 3d 952, 956 (E.D. Mo. 2017).

To qualify as functionally equal to a listed impairment, a child's condition must result in an "extreme" limitation of functioning in one domain of functioning, or "marked" limitations in two domains of functioning.  20 C.F.R. § 416.926a(a).  The domains are "broad areas of functioning intended to capture all of what a child can or cannot do."  20 C.F.R. § 416.926a(b)(1).  The six domains used by the Acting Commissioner in making such a determination are:  1) Acquiring and Using Information; 2) Attending and Completing Tasks; 3) Interacting and Relating with Others; 4) Moving About and Manipulating Objects; 5) Caring for Oneself; and 6) Health and Physical Well-Being.  *Id.*  If this analysis shows the child not to have an impairment that is functionally equal in severity to a listed impairment, the ALJ must find the child not disabled.  *Oberts o/b/o Oberts v. Halter*, 134 F. Supp. 2d 1074, 1082 (E.D. Mo. 2001).  The Acting Commissioner's findings are conclusive upon this Court if they are supported by substantial evidence.  42 U.S.C. § 405(g).

> A child-claimant has a "marked" limitation in a domain when her
>
> > impairment(s) interferes seriously with [her] ability to independently initiate, sustain, or complete activities.  [Her] day-to-day functioning may be seriously limited when [her] impairment(s) limits only one activity or when the interactive and cumulative effects of [her] impairment(s) limit several activities.  "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme."

20 C.F.R. § 416.926a(e)(2)(i).

A child has an "extreme" limitation when the impairment "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R.

3

§ 416.926a(e)(3). In determining whether a limitation on a child-claimant's functioning may be marked or extreme, the Acting Commissioner must review all the evidence of record and "compare [the child's] functioning to the typical functioning of children [the child's] age who do not have impairments." 20 C.F.R. § 416.926a(f)(1); *see also* 20 C.F.R. § 416.926a(b) (in determining child-claimant's functioning, Commissioner looks "at how appropriately, effectively and independently [the child] perform[s] [her] activities compared to the performance of other children [the child's] age who do not have impairments."); 20 C.F.R. § 416.924a(b)(5).

### III.   THE ALJ'S DECISION

Applying the foregoing analysis, the ALJ here found that Claimant had not engaged in substantial gainful activity since the application date. (Tr. 13). She further found that Claimant had the severe impairment of attention deficit hyperactivity disorder. *Id*. She found that Claimant's impairment did not meet or medically equal the severity of one of the listed impairments. *Id*. The ALJ further found that Claimant did not have an impairment or combination of impairments that was functionally equivalent to a listed impairment. *Id*. Consequently, the ALJ found that Claimant was not disabled, as defined in the Act, from the date her application was filed through August 8, 2019, the date of the decision. (Tr. 22).

### IV.   STANDARD FOR JUDICIAL REVIEW

The Commissioner's findings are conclusive upon this Court if they comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942. *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means— and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that

4

decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the Court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

## V.   DISCUSSION

Claimant asserts that the ALJ's determination that her impairments were not functionally equivalent to a listed impairment is unsupported by substantial evidence. In response, the Commissioner maintains that the ALJ properly evaluated functional equivalence and based her decision on substantial evidence in the record as a whole.

The ALJ found that Claimant has no limitations in the domains of "moving about and manipulating objects," and "health and physical well-being." (Tr. 19-21). Claimant does not dispute this finding. The ALJ also found that Claimant has less than marked limitations in the domains of "acquiring and using information," "attending and completing tasks," "interacting and relating with others," and "caring for self" (the Disputed Domains). (Tr. 17-21). Because Claimant was not found to have marked limitations in at least two domains, her limitations were not held to be functionally equivalent to a listed impairment, and the ALJ determined she was not disabled under the Act.

Claimant argues that the ALJ's finding that her incapacities did not functionally equal a listed impairment is not supported by substantial evidence, because the only medical opinion on which she relied was that of non-examining state agency physician Dr. Kim Dempsey, who reviewed the evidence of record available as of December 5, 2017. (Tr. 71-76). Dr. Dempsey, upon review of the evidence, concluded that Plaintiff had less than marked limitations in the domain of "attending and completing tasks," and no limitations in the other five domains. (Tr. 72-73). Claimant asserts that Dr. Dempsey's opinion is insufficient to support the ALJ's decision.

Specifically, Plaintiff objects to the ALJ's reliance on Dr. Dempsey's opinion because it was issued in December 2017, approximately one-and-a-half years before Plaintiff's hearing

5

before the ALJ, and before the entry of Plaintiff's school records and certain treatment notes. However, nothing in the Social Security regulations requires a report to be within a certain time period for an ALJ to rely on it.  *See Gallup v. Saul*, 2020 WL 5107282, at *4 (E.D. Mo. Aug. 31, 2020).  Additionally, "[b]ecause state agency review precedes ALJ review, 'there is always some time lapse between the consultant's report and the ALJ hearing and decision.'" *Hildreth v. Saul*, 2020 WL 5517588, at *8 (E.D. Mo. Sept. 14, 2020) (quoting *Chandler v. Comm'r of Social Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it.").

Nor does legal authority require a consultant's medical opinion to be based on subsequently created medical records for an ALJ to rely on it.  *Barker v. Colvin*, 2015 WL 4928556, at *1 (W.D. Mo. Aug. 18, 2015) ("[T]he Court is not aware of any legal authority which holds a consultant's medical opinion must be based on subsequently created medical records, or that the consultant's opinion must necessarily be discounted because it is not based on those records.").  Additionally, the applicable regulations explicitly exempt ALJs from a requirement to obtain updated medical expert opinions when determining functional equivalence. *See* SSR 09-1p ("ALJs . . . are not required to obtain updated medical expert opinions when they determine that a child's impairment(s) functionally equals the Listings."); *see also Edwards el rel. L.T. v. Colvin*, 2013 WL 3934228, at *4-5 (N.D. Ill. July 30, 2013) (explaining that the SSA has exempted ALJs from obtaining updated opinions when considering whether a child's impairment functionally equals a Listing).

Furthermore, the opinions of state agency medical examiners merit significant consideration, as ALJs are required by regulation to consider their findings of fact about the nature and severity of a claimant's impairments.  *See* 20 C.F.R. §§ 404.1527(f); 20 C.F.R. §§ 404.1513a(b)(1) (ALJs "must" consider evidence proffered by a state agency disability examiner, "because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation."); *see also Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007).

Additionally, the ALJ did not base her decision solely on the opinion of Dr. Dempsey. The ALJ evaluated Dr. Dempsey's opinion within the record as a whole, including the record evidence added after such opinion was formed.  *See Mangrich v. Colvin*, 2016 WL 593621, at *8 (N.D. Iowa Feb. 12, 2016) (rejecting argument that ALJ's opinion was not supported by

6

substantial evidence because state agency expert's opinion was rendered without the benefit of more recent evidence, where ALJ reviewed all evidence generated after the state agency opinion). While Dr. Dempsey was not afforded an opportunity to review the information found in Claimant's school records, the ALJ was, and she relied on the same when crafting her findings. (Tr. 17-21). The ALJ also considered the observations of Claimant's teachers, therapists, and mother. *Id*. Upon consideration of these additional materials, the ALJ concluded that she agreed with Dr. Dempsey's opinion that Claimant had no limitations in the domains of "moving about and manipulating objects," and "health and physical well-being." (Tr. 19-21). However, her review of the later acquired evidence led the ALJ to conclude that Dr. Dempsey's opinion was unpersuasive as to the Disputed Domains, because the record as it existed at the time of the hearing supported some limitation in those domains. (Tr. 16).

More specifically, upon review of all evidence of record, the ALJ determined that Claimant had less than marked limitations in the domain of "acquiring and using information." The ALJ noted that the evidence showed that Claimant does well academically, having received grades that were mostly B's and C's, and she had never repeated a grade. (Tr. 17). The ALJ found that Claimant also did not have marked limitations in the domain of "attending and completing tasks." (Tr. 18). The ALJ noted that, while Claimant is impulsive and easily distracted, she is also re-directable. (Tr. 18). The ALJ also considered that when she questioned Claimant during the hearing, she was able to sit still and respond appropriately to all of the ALJ's queries. *Id*. With respect to the domain of "interacting and relating to others", the ALJ found that, while Claimant's mother and teachers noted that she was sometimes disrespectful to adults, the record indicates that she makes friends easily, has no trouble keeping friends, and is cooperative with her teachers and therapist. (Tr. 19). The ALJ also noted that Claimant was polite, respectful, and cooperative while questioned at the hearing. *Id*. Finally, with respect to the domain of "caring for self", the ALJ noted that while Claimant is easily frustrated, has thrown tantrums at home, and has trouble controlling her energy levels, she has not been observed to exhibit depression, anxiety, or mood swings. Thus, the ALJ concluded that Claimant has less than marked limitations in this domain as well.

Upon review of the record, the Court concludes that substantial evidence supports the ALJ's conclusions with respect to the Disputed Domains. For example, Claimant has earned mostly B's and C's in school. (Tr. 17, 41, 217-218). Claimant's mother identified this as a

7

problem, testifying that she expected Claimant to be an honor roll student.  (Tr. 42).  However, falling short of such an expectation does not constitute evidence of disability.  Claimant never had to repeat a grade or take special education classes.  (Tr. 17, 36-37).  The record also indicates that Claimant was able to remember and apply what she learned.  For example, Claimant read a book about a child that struggles with focusing and sitting still called "I Have the Wiggly Fidgets," in which the main character makes "attention" cards to leave at his work-station as reminders of how to behave.  (Tr. 274).  After reading this book, Claimant made similar note cards for herself, which she used to remind herself to focus, listen, and attend to tasks.  *Id*.  Her second-grade teacher noted that she was one of the "strongest readers" in her class.  (Tr. 218).  While she also noted that Claimant's test scores do not accurately reflect her academic strengths, which her teacher attributed to Claimant's difficulty concentrating, Claimant's academic performance was strong overall.  Also, in Claimant's function report, her mother indicated that her limitations resulting from ADHD did not impair her ability to progress in learning.  (Tr. 146).

Additionally, the record indicates that Claimant's medications for ADHD were quite effective in helping her manage her symptoms.  At a medication management appointment on October 24, 2018, it was noted that her medication dosages had been increased because their effects had been wearing off before the end of the school day.  (Tr. 298).  The records indicate that Claimant was doing well with the increase, and that the medication "now seem[ed] to last her entire school day," and she was "able to focus and concentrate."  (Tr. 298).  At a follow up appointment on January 24, 2019, Claimant's mother reported that she felt the medications were working well.  (Tr. 303).  Furthermore, at the hearing, Claimant's mother testified that Claimant "does amazing" on her medications, and that taking them improved her behavior and schoolwork.  (Tr. 41).  "If an impairment can be controlled by treatment or medication, it cannot be considered disabling."  *Wildman v. Astrue*, 596 F.3d 959, 965 (8th Cir. 2010) (quoting *Brown v. Barnhart,* 390 F.3d 535, 540 (8th Cir. 2004) (quotations omitted).

Additionally, Claimant's mother testified that Claimant had no trouble dressing or getting ready for school, and that she liked to "help out a lot" at home with things like cooking.  (Tr. 41).  Claimant was noted to have no difficulties making and keeping friends.  (Tr. 41, 237, 277).  She was generally respectful and communicative both at the hearing and with her therapist and psychiatrist.  (Tr. 61-65, 250, 257-60, 263, 267, 270, 280, 288).  In Claimant's function report,

8

her mother indicated that her impairments did not affect her behavior with other people and did not impair her ability to cooperate with others or take care of her personal needs. (Tr. 150-51).

Plaintiff points to other evidence of record demonstrating that Claimant had difficulties with attention and focus, and was sometimes not respectful, or threw tantrums. While there is certainly evidence that supports Plaintiff's argument, there is nonetheless ample evidence to provide substantial support for the ALJ's determination that Claimant does not have "marked" difficulties in the Disputed Domains.

The Court acknowledges that the record contains conflicting evidence, and the ALJ could have reached a different conclusion. But it is the ALJ's function to resolve evidentiary conflicts, and this Court's task is not to reweigh the evidence presented to the ALJ. *Renstrom*, 680 F.3d at 1065. The ALJ's weighing of the evidence here fell within the available "zone of choice," and the Court cannot disturb that decision merely because it might have reached a different conclusion. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

**VI.   CONCLUSION**

Having reviewed the entire record, the Court finds that the ALJ considered the evidence as a whole and made a proper determination. Consequently, for all of the foregoing reasons, the Court determines that the ALJ's decision is supported by substantial evidence.

Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

Dated this 30th day of September, 2021.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE